## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**KYLE MELADY,**

      **Petitioner,**

**v.**                                **Case No. 8:21-cv-213-TPB-TGW**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

      Kyle Melady, a Florida prisoner, timely filed a counseled petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1.) Having considered the petition, Respondent's response in opposition (Doc. 8), and Melady's reply (Doc. 9), the Court **DENIES** the petition.[1]

## Procedural History

      Following a jury trial, Melady was convicted of one count of burglary of an occupied dwelling. (Doc. 8-2, Ex. 16.) After finding that he qualified as a violent career criminal, the state trial court sentenced Melady to a mandatory term of thirty years' imprisonment. (*Id.*, Ex. 18, at 7-8.) The state appellate court *per curiam* affirmed the conviction and sentence. *Melady v.*

---

[1] Melady has also filed a motion for discovery. (Doc. 17.) For the reasons explained below, that motion is denied as well.

*State*, 236 So. 3d 1052 (Fla. 2d DCA 2017). Melady subsequently moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 8-2, Ex. 28.) The state postconviction court rejected Melady's claims, and the state appellate court *per curiam* affirmed the denial of relief. (*Id.*, Exs. 29, 33, 37; *Melady v. State*, 321 So. 3d 184 (Fla. 2d DCA 2020).) Melady separately filed a petition alleging ineffective assistance of appellate counsel. (Doc. 8-2, Ex. 44.) The state appellate court denied relief. (*Id.*, Ex. 47.) This federal habeas petition followed. (Doc. 1.)

## Factual Background[2]

On the morning of July 27, 2015, Mandy Griffith was eating breakfast with her two children at her house in New Port Richey, Florida. (Doc. 8-2, Ex. 14, at 119-20.) Around 9:30 a.m., she was "startled" by "repeated knocks at the door and repeated doorbell rings." (*Id.* at 120-21.) Because she was not expecting anyone, Griffith did not answer the door. (*Id.* at 121.) Once the knocking and ringing stopped, she took her children to their rooms so that she could look outside. (*Id.* at 121-22.) Griffith returned to the kitchen, looked out the window, and saw a man in her backyard. (*Id.* at 122.)

As Griffith walked toward the front door, she noticed that the man had entered her screened-in patio and was crouching by the sliding glass door.

---

[2] This factual summary is based on the trial transcript.

(*Id.* at 123.) Griffith heard "cracking" and saw the man trying to "break the door" with a crowbar. (*Id.* at 124.) Standing "six to eight feet" from the man, Griffith screamed, "[W]hat are you doing?" (*Id.*) She made eye contact with the man and looked at him for "[m]aybe three seconds"—enough time to get "[a] good look." (*Id.* at 125.) The man ran around to the front of the house, got in a "small silver compact car," and drove away. (*Id.* at 125-26.) Griffith called 911, and the police arrived. (*Id.* at 126.)

Two days later, law enforcement met with Griffith in her house and provided her with "three piles" of photographic lineups. (*Id.* at 132-33.) She went through each pile of photographs twice, identifying Melady as the burglar. (*Id.* at 133-34.) Griffith later testified that she was "one hundred percent sure" Melady was the perpetrator. (*Id.* at 135.) The police officer who conducted the lineup testified that, when Griffith identified Melady, "[s]he was pointing, she started shaking[,] her eyes got real wide[,] and she sa[id] that's him." (*Id.* at 177.) Griffith subsequently made an in-court identification of Melady. (*Id.* at 136-37.)

Melady testified at trial. He admitted to having seventeen prior felony convictions, but he denied burglarizing Griffith's house. (*Id.* at 194-95.)

## Standards of Review

**AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 1354 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can be granted only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

4

AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Melady's conviction and sentence, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

**Ineffective Assistance of Counsel**

Melady alleges ineffective assistance of trial and appellate counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*.

Melady must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Melady must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *See Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v.*

*Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To establish a claim of ineffective assistance of appellate counsel, Melady must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, he would have prevailed on his appeal. *Robbins*, 528 U.S. at 285-86.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation and citations omitted); *see also Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim—which is governed by the deferential *Strickland* test—through the lens of AEDPA deference, the resulting standard of review is doubly deferential.") (internal quotation and citation omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

7

**Exhaustion of State Remedies; Procedural Default**

A federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (stating that unexhausted claims that "would now be procedurally barred in state court due to a state-law procedural default" provide no basis for federal habeas relief).

A petitioner shows cause for a procedural default when he demonstrates "that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." *Wright v. Hopper*, 169

8

F.3d 695, 703 (11th Cir. 1999). A petitioner demonstrates prejudice by showing that "there is at least a reasonable probability that the result of the proceeding would have been different" absent the constitutional violation. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Id.*

## Discussion

**Ground One**

Melady contends that appellate counsel was ineffective for failing to raise two alleged constitutional violations. (Doc. 1 at 9-13.) First, he argues that appellate counsel should have raised a *Giglio*[3] claim based on Griffith's allegedly false testimony about "her prior crimes of theft and dishonesty." (*Id.* at 12-13.) Second, Melady faults appellate counsel for failing to argue that the trial court relied on "false information" "when it sentenced [him] as a [v]iolent [c]areer [c]riminal and imposed a 30-year sentence."[4] (Doc. 9 at 7; *see*

---

[3] *Giglio v. United States*, 405 U.S. 150 (1972).

[4] In the heading for Ground One, Melady asserts that appellate counsel failed to raise "numerous issues" on direct appeal. (Doc. 1 at 9.) But the only issues identified in Ground One are the alleged *Giglio* violation and the trial court's alleged consideration of false information at sentencing. (*Id.* at 9-13; *see also* Doc. 9 at 3-7.) Accordingly, the Court considers only whether appellate counsel was ineffective for failing to raise these two issues. Regardless, Melady fails to establish that the state court acted unreasonably in rejecting any of his claims of ineffective assistance of appellate counsel.

*also* Doc. 1 at 12.) Melady separately argues that appellate counsel had an "obvious conflict of interest" because he also represented Melady at trial. (Doc. 1 at 9.) For that reason, Melady says, appellate counsel "should not have agreed to do the appeal." (*Id.*) The Court considers each claim in turn.

The Alleged *Giglio* Violation

During a break in jury selection, Melady's trial counsel informed the court that he had spoken to "a private investigator" over the weekend and discovered that Griffith, the victim, "ha[d] what [counsel] consider[ed] two qualified misdemeanors from Ohio from a [long] time ago." (Doc. 8-2, Ex. 14, at 55.) Counsel explained that the convictions were for passing "worthless checks," and that he intended to "elicit information" from Griffith about her "two prior misdemeanors." (*Id.*) Counsel also stated that he had not obtained "the judgment[s] and sentences" for the convictions. (*Id.*) The court ultimately ruled that counsel "could ask" Griffith about the convictions, but that if she said she had "no prior crimes of dishonesty or false statement," counsel would be "stuck with the answer." (*Id.* at 113.)

On cross-examination, counsel asked Griffith whether she had "ever been convicted of a crime involving dishonesty or false statement." (*Id.* at 139.) Griffith answered, "No." (*Id.*) Neither side objected, and the examination continued. (*Id.*)

In his federal habeas petition, Melady argues that the prosecution committed a *Giglio* violation by "allow[ing] Griffith to lie on the stand about her prior crimes of theft and dishonesty." (Doc. 1 at 12.) Thus, according to Melady, appellate counsel was ineffective for failing to raise the alleged *Giglio* violation on direct appeal. (*Id.* at 12-13.) Melady asserted this ineffective-assistance claim in his petition alleging ineffective assistance of appellate counsel. (Doc. 8-2, Ex. 44, at 18-20.) The state appellate court rejected the claim without explanation. (*Id.*, Ex. 47.)

Because the final state-court decision "is unaccompanied by an explanation," Melady must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. He cannot do so. "[T]o determine whether [Melady] has shown ineffective appellate counsel, [the Court] must determine whether [he] has shown underlying meritorious . . . claims." *Payne v. Allen*, 539 F.3d 1297, 1314 (11th Cir. 2008). "Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit." *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *see also Brown v. United States*, 720 F.3d 1316, 1335 (11th Cir. 2013) ("It is . . . crystal clear that there can be no showing of actual prejudice from an appellate attorney's failure to raise a meritless claim.").

Melady's *Giglio* claim is meritless, so appellate counsel was not ineffective for failing to pursue it. "To establish a *Giglio* claim, a habeas

petitioner must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, *i.e.*, that there is any reasonable likelihood that the false testimony could . . . have affected the judgment." *Guzman v. Sec'y, Dep't of Corr.*, 663 F.3d 1336, 1348 (11th Cir. 2011). The petitioner "must identify evidence the government *withheld* that would have revealed the falsity of the testimony." *United States v. Stein*, 846 F.3d 1135, 1147 (11th Cir. 2017) (emphasis added); *see also Ford v. Hall*, 546 F.3d 1326, 1331 (11th Cir. 2008) ("*Giglio* error . . . occurs when the *undisclosed* evidence demonstrates that the prosecution's case included perjured testimony and that the prosecution knew, or should have known, of the perjury." (emphasis added)).

Here, "there was no *Giglio* violation because there was no undisclosed evidence." *Shuler v. Sec'y, Fla. Dep't of Corr.*, 610 F. App'x 856, 858 (11th Cir. 2015). Melady's trial counsel was aware of the information that supposedly "revealed the falsity of [Griffith's] testimony"—namely, her two prior convictions for passing worthless checks. *Stein*, 846 F.3d at 1147. Moreover, there is no indication that, before counsel raised the matter at trial, the prosecution knew of Griffith's prior convictions. Because the information in question "was not suppressed," Melady's "*Giglio* claim based on [Griffith's] alleged lies about [her prior convictions] fails." *Hammond v. Hall*, 586 F.3d 1289, 1309 (11th Cir. 2009); *see also Rentas v. Fla. Att'y Gen. & Sec'y*, No.

12

2:15-cv-751-JES-MRM, 2017 WL 11637307, at *5 (M.D. Fla. July 27, 2017)

("Claim One fails at the outset because a *Giglio* analysis presupposes that the evidence at issue was withheld from the defense."). And because the *Giglio* claim lacks merit, appellate counsel was not ineffective for failing to raise it on direct appeal.

### The Alleged Sentencing Error

As noted above, the trial court sentenced Melady as a violent career criminal to a mandatory term of thirty years in prison. (Doc. 8-2, Ex. 18, at 7-8.) "[T]o be sentenced as a violent career criminal, a defendant must have been previously incarcerated in state or federal prison, must have been convicted three times as an adult of certain violent felonies (listed in the statute), and must have committed another such offense within" five years of his release from prison for a qualifying felony. *Clines v. State*, 912 So. 2d 550, 553 (Fla. 2005). Burglary is a qualifying offense under the statute. Fla. Stat. §§ 775.084(1)(d)(1), 776.08; *see also Fisher v. State*, 129 So. 3d 468, 468 (Fla. 2d DCA 2014) (noting that "[b]urglary" is a qualifying felony for purposes of the violent-career-criminal statute).

The trial court adjudicated Melady a violent career criminal based on "well more than three qualifying felonies," including at least seven prior burglary convictions. (Doc. 8-2, Ex. 18, at 3-4, 8.) Because the jury in this case convicted Melady of burglary of an occupied dwelling (a second-degree

felony), the court was required to sentence him to "a term of years not exceeding 40, with a mandatory minimum term of 30 years' imprisonment."[5] Fla. Stat. § 775.084(4)(d)(2). The court ultimately imposed a sentence of thirty years in prison. (Doc. 8-2, Ex. 18, at 7.) It also declined to "give [Melady] a supersedeas bond" pending appeal, explaining that he had previously "been to prison for this very same crime"—that is, burglary of an occupied dwelling. (*Id.* at 8-9.)

Melady contends that the court relied on "false information" when it "sentenced [him] as a [v]iolent [c]areer [c]riminal and imposed a 30-year sentence." (Doc. 9 at 6-7.) He claims that his sentencing scoresheet incorrectly stated that he had a prior conviction for burglary of a dwelling when, in fact, the conviction was for burglary of a structure. (*Id.* at 6.) According to Melady, the court "took into consideration" his "erroneous [prior conviction] for burglary of a dwelling" "as an impermissible sentencing factor." (*Id.*) Melady maintains that appellate counsel was ineffective for failing to raise this issue in a "motion . . . to preserve [] sentencing errors." (*Id.* at 5.)

---

[5] A trial court "has the discretion not to sentence a defendant as a violent career criminal if it determines that such a sentence is not necessary for the protection of the public." *Williams v. State*, 249 So. 3d 721, 722 (Fla. 5th DCA 2018). This exception was not at issue in Melady's case.

The state appellate court rejected Melady's ineffective-assistance claim without explanation. (Doc. 8-2, Ex. 47.) Thus, Melady must show that "there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. He cannot meet his burden because the underlying sentencing-error claim lacks merit, and appellate counsel "cannot be deficient for failing to raise a meritless claim." *Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008).

"A defendant has a due process right . . . not to be sentenced based on false or unreliable information." *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010); *see also Roberts v. United States*, 445 U.S. 552, 556 (1980) ("We have . . . sustained due process objections to sentences imposed on the basis of misinformation of constitutional magnitude."). "To prevail on a challenge to a sentence based on the consideration of such information, a defendant must show (1) that the challenged evidence is materially false or unreliable and (2) that it actually served as the basis for the sentence." *Ghertler*, 605 F.3d at 1269. The defendant must make "a convincing showing that the introduction of specific constitutionally infirm evidence had an ascertainable and dramatic impact on the sentencing authority." *United States v. Sjeklocha*, 114 F.3d 1085, 1089 (11th Cir. 1997) (internal quotation marks omitted).

15

The Court assumes, without deciding, that Melady's scoresheet mistakenly listed one of his prior convictions for burglary of a structure as burglary of a dwelling. Even so, Melady cannot show that this allegedly false information "actually served as the basis for [his] sentence." *Ghertler*, 605 F.3d at 1269. As noted above, Melady received a mandatory thirty-year sentence based on his designation as a violent career criminal. That designation would have remained the same even if his scoresheet had not contained the allegedly false information. Indeed, Melady had at least seven prior burglary convictions—well over the three qualifying felonies required to sustain a violent-career-criminal designation. (Doc. 8-2, Ex. 18, at 3-4, 8.) Moreover, "convictions for burglary of an unoccupied structure qualify for sentencing as a violent career criminal." *Ubilla v. State*, 8 So. 3d 1200, 1201 (Fla. 3d DCA 2009). That means that, even if the conviction in question had been properly listed as burglary of a structure, it still would have counted toward Melady's violent-career-criminal designation.

Thus, because Melady's mandatory thirty-year sentence was not affected by the allegedly false information in his scoresheet, that information did not have "an ascertainable and dramatic impact on the sentencing authority." *Sjeklocha*, 114 F.3d at 1089 (internal quotation marks omitted). Appellate counsel was not ineffective for failing to raise this meritless claim of sentencing error.

16

<u>The Alleged Conflict of Interest</u>

As noted above, the same lawyer represented Melady at trial and on direct appeal. (Doc. 8-2, Ex. 14, at 2; *id.*, Ex. 22, at 1.) Melady contends that this was an "obvious conflict of interest" because it required counsel to "take responsibility for his own mistakes" on direct appeal. (Doc. 1 at 12.) Thus, according to Melady, appellate counsel was ineffective and "should not have agreed to do the appeal." (*Id.* at 9.)

Respondent correctly contends that this claim is unexhausted and procedurally defaulted. (Doc. 8 at 16.) A petitioner "must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan*, 526 U.S. at 842. Melady never raised his conflict-of-interest claim in state court. It is therefore unexhausted.

Melady cannot return to state court to present his unexhausted claim in a second, untimely petition alleging ineffective assistance of appellate counsel. *See* Fla. R. App. P. 9.141(d)(5) ("[A] petition alleging ineffective assistance of appellate counsel on direct review must not be filed more than 2 years after the judgment and sentence become final on direct review. . . ."). As a result, the claim is procedurally defaulted. *See Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999) ("[I]f the petitioner simply never raised a claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred due to a state-law procedural default, the federal court

17

may foreclose the petitioner's filing in state court; the exhaustion requirement and procedural default principles combine to mandate dismissal."). And because Melady has not shown that an exception applies to overcome the default, the claim is barred from federal habeas review.

Even if Melady had exhausted his conflict-of-interest claim, he would not be entitled to relief because it fails on the merits. *Strickland* applies to claims of "ineffective assistance of appellate counsel based on an alleged conflict arising from the same counsel representing the [d]efendant both at trial and on appeal." *Whiting v. Burt*, 395 F.3d 602, 619 (6th Cir. 2005). As explained above, the two claims that Melady believes appellate counsel should have raised—the alleged *Giglio* violation and the alleged sentencing error—lacked merit. "Appellate counsel is not ineffective for failing to raise claims reasonably considered to be without merit." *Nyhuis*, 211 F.3d at 1344 (internal quotation marks omitted). Thus, even if Melady had not defaulted his conflict-of-interest claim, it would not warrant federal habeas relief.

**Ground Two**

Melady contends that his "pretrial [c]ourt-appointed counsel" was ineffective for failing to seek suppression of the victim's in-court and out-of-court identifications. (Doc. 1 at 13-14.) Melady was initially represented by appointed counsel. Shortly before trial, he retained private counsel, who proceeded to represent him at trial and on direct appeal. (Doc. 8-2, Ex. 14, at

7-11.) On the first day of trial, counsel moved to suppress the victim's "out-of-court photo pack identification," arguing that (1) the victim "identified [Melady] [based] on a three [] second visual," (2) Melady's photograph was "the FIRST photo out of all the photos" shown to the victim, (3) after the identification, law enforcement improperly "advised the [v]ictim that she had picked the correct photo," and (4) the victim subsequently "viewed [Melady] on the Pasco Sheriff's Office Facebook" page. (*Id.*, Ex. 13, at 1-2.) Counsel argued that "[a]ny in-court identification would also be tainted" for the same reasons. (*Id.* at 1.)

After the prosecution rested, the trial court orally denied Melady's motion to suppress. (*Id.*, Ex. 14, at 178-79.) The court held that the victim had a "significant" opportunity to "view the suspect at the time of the crime." (*Id.* at 179.) The court explained that, although the victim had only "three seconds" to view the suspect, "it was a very long three seconds in that witness's life based on the [c]ourt's view of her testimony." (*Id.*) The court also found that the victim's "degree of attention was high" and "she was focused right at the suspect." (*Id.*) In addition, the court noted that the victim "seemed very clear that [Melady] was the person that did this," and that she made the identification only two days after "the crime and confrontation"— "not a long time for purposes of that identification." (*Id.*) Accordingly, the

court found "no reason to suppress the identification from the photo lineup or any reason to suppress the in-court identification."[6] (*Id.*)

In his federal habeas petition, Melady does not dispute that trial counsel moved to suppress the victim's out-of-court and in-court identifications. Instead, he argues that his pretrial, appointed counsel was ineffective for (1) failing to "raise[] the [identification] issue pretrial" and (2) failing to "obtain the necessary documentation and elicit the necessary testimony in pretrial depositions to ferret out the issues for a proper pretrial presentation to the trial court." (Doc. 1 at 14.) Melady also contends that counsel should have sought "the aid of an expert on eyewitness testimony or on eyewitness identification to testify either pretrial or at trial about the inherent unreliability of identification, especially when the identifying witness observed the perpetrator for less than 5 seconds, under stress and through a door." (*Id.* at 14-15.)

The state postconviction court rejected Melady's ineffective-assistance claim as "meritless and refuted by the record." (Doc. 8-2, Ex. 29, at 3.) The court held that, "[t]o the extent [Melady] claim[ed] his appointed counsel failed to file a motion to suppress," he was not "prejudiced" because "his hired

---

[6] The court separately rejected Melady's argument that the in-court identification must be suppressed because, before trial began, the prosecutor allegedly "brought [the victim] into the courtroom" and "pointed [Melady] out [to her] at that point." (Doc. 8-2, Ex. 14, at 137-38, 179; *id.*, Ex. 15, at 207.)

counsel filed a motion to suppress both [the] in court and out of court identification[s] of [him], on the very basis [he] claim[ed] that counsel should have filed such a motion." (*Id.*) Moreover, as just noted, the trial court denied Melady's request to suppress the identifications, thus refuting his assertion "that the motion would have been successful." (*Id.*)

The rejection of this claim was reasonable.[7] Specifically, Melady failed to establish a "reasonable probability that the outcome of his suppression [motion] . . . would have been different" if pretrial counsel had taken the steps he identifies. *Waldrip v. Humphrey*, 532 F. App'x 878, 886 (11th Cir. 2013) (internal quotation marks omitted). As noted above, Melady contends that pretrial counsel failed to "obtain the necessary documentation and elicit the necessary testimony in pretrial depositions to ferret out the issues for a proper pretrial presentation to the trial court." (Doc. 1 at 14.) But Melady provides no specifics about the "documentation" or "testimony" that he believes pretrial counsel should have obtained. Nor does he explain how further investigation would have bolstered his efforts to suppress the identifications. Simply put, Melady's "[c]onclusory allegations of ineffective assistance are insufficient." *Wilson v. United States*, 962 F.2d 996, 998 (11th

---

[7] Respondent contends that Melady did not exhaust his claim concerning counsel's alleged failure to seek suppression of the in-court identification. (Doc. 8 at 20-21.) The Court need not decide whether this claim is procedurally defaulted because it fails on the merits. *See Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020) ("[A] federal court may skip over the procedural default analysis if a claim would fail on the merits in any event.").

Cir. 1992); *see also Philpot v. United States*, No. 20-CR-60086-RAR, 2023 WL 4560878, at *6 (S.D. Fla. July 17, 2023) (holding that "[m]ovant [] failed to show that his defense counsel was ineffective in failing to prepare for his suppression hearing" because there was "no evidence that additional investigation would have uncovered evidence" that could have affected outcome of motion to suppress); *Savery v. Sec'y, Dep't of Corr.*, No. 6:09-cv-810-GAP-DAB, 2010 WL 4683773, at *12 (M.D. Fla. Nov. 10, 2010) ("To the extent that Petitioner alleges that counsel should have discovered additional exculpatory evidence, this claim is conclusory and cannot maintain a claim for ineffective assistance of counsel.").

Melady also failed to establish "a reasonable probability that, but for counsel's [failure to hire an expert on eyewitness identifications], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The burden of establishing prejudice under *Strickland* "is particularly heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative." *McKiver v. Sec'y, Fla. Dep't of Corr.*, 991 F.3d 1357, 1365 (11th Cir. 2021) (internal quotation marks omitted). For that reason, "a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness." *Id.*

Here, Melady simply asserts, without explanation, that "it was incumbent on [c]ounsel to seek the aid of an expert on eyewitness testimony or on eyewitness identification to testify either pretrial or at trial about the inherent unreliability of identification." (Doc. 1 at 14.) Melady provides no additional information about the substance of the proposed expert testimony. And he offers no basis to conclude that an expert would testify that the victim's identification in this case was unreliable. "Without some specificity as to the proposed expert's testimony, any assertion that an expert would testify consistently with [Melady's] claims is mere speculation and does not entitle him to habeas relief." *Finch v. Sec'y, Dep't of Corr.*, 643 F. App'x 848, 852 (11th Cir. 2016). Accordingly, Melady failed to establish that counsel was ineffective for failing to retain an expert witness. *See Holt v. Sec'y, Fla. Dep't of Corr.*, 489 F. App'x 336, 338 (11th Cir. 2012) (holding that state court reasonably rejected *Strickland* claim because "[i]t [was] speculative that an expert witness would in fact have testified" the way petitioner wanted); *Moore v. Sec'y, Fla. Dep't of Corr.*, No. 3:06-cv-127-MMH, 2022 WL 4133198, at *23 (M.D. Fla. Sept. 12, 2022) ("[Petitioner's] claim about the testimony of expert witnesses is speculative because he does not specify the substance of the proposed experts' testimony, and he presumes the experts would have testified favorably to the defense.").

For all these reasons, Ground Two is denied.[8]

**Ground Three**

Melady contends that pretrial counsel was ineffective for failing to "properly advise" him about the prosecution's "initial plea offers." (Doc. 1 at 15.) Specifically, he alleges that during his arraignment, the prosecutor "offered to resolve the pending matters" for a prison term of "44.4 months." (*Id.* at 16.) According to Melady, had counsel "informed [him] of the pros and cons of the plea" offer, he "would have received a 44.4-month sentence, not a 360-month sentence." (*Id.* at 18.) Melady also faults counsel for not "making any formal written plea offers before trial." (*Id.* at 15.)

During the arraignment, the prosecutor indicated that "right now," the "bottom of the guidelines [for Melady] was 44.4" months. (Doc. 8-2, Ex. 3, at 5.) The prosecutor clarified that he had said "right now" because Melady "qualif[ied] for habitual offender" in light of his "prior burglary convictions," and might "qualify for other enhancements" as well. (*Id.* at 5-6.) The trial court then asked, "The brass tacks today if he wanted to resolve it, it's 48 months?" (*Id.*) The prosecutor answered, "44.4." (*Id.*) After outlining Melady's options at this stage of the proceedings, the court indicated that "we need to

---

[8] Melady appears to fault the state postconviction court for rejecting Grounds Two and Three "without a response from the State or a hearing." (Doc. 1 at 13, 15.) It is well established, however, that "an alleged defect in a collateral proceeding does not state a basis for habeas relief." *Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004).

get a trial set because it doesn't seem like there's any way to resolve the

case." (*Id.* at 7.) Melady told the court that he was "not guilty on this

burglary" and offered to "take a polygraph test" to prove his innocence. (*Id.* at

8.)

At the first pretrial hearing, the prosecutor reiterated that Melady

"score[d] 44.4 months, the bottom of the guidelines." (*Id.*, Ex. 5, at 3.) The

State subsequently filed a notice of enhanced penalty, stating that Melady

qualified as a habitual felony offender and violent career criminal. (*Id.*, Ex.

6.) At a subsequent pretrial hearing, the court asked the State "what [it was]

seeking in Mr. Melady's case if he wanted to resolve it." (*Id.*, Ex. 9, at 3.) The

prosecutor responded, "Judge, he's an HO and VCC. At this time there has

not been a written offer made." (*Id.*)

At the final pretrial hearing, the court asked the State whether it was

"willing to make any deals today." (*Id.*, Ex. 12, at 12.) The prosecutor said,

"No, Your Honor." (*Id.*) Melady subsequently claimed that he had told counsel

"multiple times" that he would "take . . . two years here and end it," but that

counsel "never told the State" about his offer. (*Id.* at 13.) The court

responded:

> Well, probably because [counsel] realized that somebody
> designated as a violent career criminal by the State of Florida
> would never get a two-year disposition from the State of Florida.

25

> Like you have a better chance of winning the Power Ball lottery than you do getting them to agree to a two-year DOC sentence on a 30-year felony VCC designation.
>
> And I know that based on 20 years of being here in the Sixth Circuit. And as do[] pretty much all the attorneys here know that [the State Attorney] would never agree to that. I'm not saying it's not right or wrong. It doesn't matter. I just know that he wouldn't agree to it, and he has to sign off on that, and he simply wouldn't do that, based on 20 years of watching this.

(*Id.* at 13-14.) The prosecutor confirmed that the State Attorney would have to approve any plea deal for less than the thirty-year mandatory minimum. (*Id.* at 14.) He also stated that any offer "would probably be 10 to 15" given that Melady had "done five years DOC before" and had "multiple burglaries in his past." (*Id.* at 14-15.) The court indicated that trial would begin "on Monday" and asked Melady whether he had "any questions." (*Id.* at 15.) Melady said he did not. (*Id.* at 16.)

As noted above, Melady claims that counsel was ineffective for failing to "properly advise" him concerning the prosecution's "initial plea offers." (Doc. 1 at 15.) He contends that "[t]he record is abundantly clear" that he received a "44-month offer" at his arraignment, and that but for counsel's deficient performance, "he would have accepted the 44-month offer . . . rather than risk a 30-year sentence." (Doc. 9 at 10-11.) He also claims that counsel was ineffective for "not making any formal written plea offers before trial." (Doc. 1 at 15.)

The state postconviction court rejected this claim, finding that Melady failed to establish that he "rejected a plea offer based on misadvice." (Doc. 8-2, Ex. 29, at 5.) The court explained that, to prevail on this claim, Melady was required to "demonstrate a reasonable probability" that "(1) he [] would have accepted the offer had counsel advised [him] correctly, (2) the prosecutor would not have withdrawn the offer, (3) the court would have accepted the offer, and (4) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." (*Id.* (citing *Alcorn v. State,* 121 So. 3d 419, 422 (Fla. 2013).)

The court found that Melady failed to satisfy the second prong of this test—namely, that "the prosecutor would not have withdrawn the offer." (*Id.*) According to the court, "there was never a written offer from the State, and during multiple pretrial hearings the State appeared to waver on its certainty regarding its ability to offer the bottom of the guidelines based upon [Melady's] criminal history." (*Id.*) Citing the transcript of the final pretrial hearing, the court found that "not only had the State not formally extended [] [a 44-month] offer, but also, if ever such an offer *was* extended in passing, not formally or finalized, it would have certainly been withdrawn by the State." (*Id.* at 6.)

The rejection of this claim was reasonable. "[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 566 U.S. 134, 140 (2012). To establish prejudice in the context of a failed plea bargain, the petitioner must show that, "but for the ineffective assistance of counsel, a reasonable probability existed that: (1) the plea offer would have been presented to the court (*i.e.* the [petitioner] would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) the court would have accepted its terms; and (3) under the offer's terms, the conviction or sentence, or both, would have been less severe than under the judgment and sentence that were, in fact, imposed." *Carmichael v. United States*, 966 F.3d 1250, 1259 (11th Cir. 2020).

Even assuming that the State made a 44-month offer during the arraignment, Melady cannot show "a reasonable probability that the prosecution would have adhered to" that offer. *Frye*, 566 U.S. at 150. Florida law "authorizes the prosecutor to withdraw a plea offer at any time before it is formally accepted by the trial judge." *Alcorn*, 121 So. 3d at 430; *see also Mitchell v. State*, 197 So. 3d 1271, 1273 (Fla. 2d DCA 2016) ("In Florida, trial courts and prosecutors have the discretion to withdraw a plea offer."). At the final pretrial hearing, the prosecutor represented that (1) the State Attorney would have to approve any plea offer for less than the thirty-year mandatory

28

minimum, and (2) such an offer "would probably be [for] 10 to 15 [years]" in light of Melady's criminal history. (Doc. 8-2, Ex. 12, at 14-15.) There is no indication that the State Attorney approved a 44-month offer in Melady's case. Thus, the state postconviction court reasonably concluded that, to the extent such an offer ever existed, "it would have certainly been withdrawn by the State." (*Id.* at 6; *see also Diep Vu Ho v. United States*, No. 19-12321-F, 2019 WL 9096027, at *1 (11th Cir. Dec. 3, 2019) (rejecting ineffective-assistance claim because defendant "failed to show that, even if [the government] had [made a favorable plea offer], [it] would not have withdrawn the plea, as it was an 'enormous, and random, departure—not only from his proper guideline sentencing range—but also from [the U.S. Attorney's Office's] practice'"); *Preston v. Sec'y, Dep't of Corr.*, No. 17-14618-H, 2018 WL 8061783, at *4 (11th Cir. Nov. 16, 2018) ("[T]he five-year offer to which [petitioner] referred was an informal offer, and had not been approved by the state prosecutor's supervisor, and, therefore, [petitioner] could not show that there was a reasonable probability that the five-year offer would have been presented to the court.").)

Because Melady failed to establish prejudice, the state postconviction court reasonably rejected his ineffective-assistance claim. Ground Three is denied.[9]

**Ground Four**

Melady contends that pretrial counsel was ineffective for failing to "file [a] proper notice of alibi." (Doc. 1 at 19.) In his Rule 3.850 motion, Melady elaborated on this claim, alleging that two potential alibi witnesses—Kimberly Larson and Melady's sister, Kayle Melady—"would have testified to [Melady] being at a location other than the victim's alleged address." (Doc. 8-2, Ex. 28, at 13.) According to Melady, counsel's failure to file a notice of alibi precluded him from calling these two witnesses and "forced [him] to testify to advance his [d]efense." (Doc. 1 at 19.)

The state postconviction court rejected this ineffective-assistance claim. As for Kayle Melady, the court noted that counsel "spoke on the record about his decision not to call" her at trial. (Doc. 8-2, Ex. 29, at 4.) Specifically, counsel stated that, although Melady sometimes "stayed" at Kayle's house, she could not "identify a certain date other than she knew he was there a day to remove her washer and dryer." (*Id.*, Ex. 14, at 181.) Thus, counsel

---

[9] To the extent that Melady faults counsel for not making an unspecified "formal written" plea offer, his claim fails because he does not show that "the outcome of the plea process would have been different" had counsel made an offer. *Lafler v. Cooper*, 566 U.S. 156, 163 (2012).

"worried" that if he called Kayle, the jury would think he was "trying to pull a fast one over them." (*Id.* at 183.) The state postconviction court "interpret[ed] th[ese] statement[s] as counsel making a strategic decision not to call Kayle Melady, even had the appropriate paperwork been previously filed." (*Id.*, Ex. 29, at 4.) Thus, the court concluded that counsel was not ineffective "for fail[ing] to call and investigate this witness." (*Id.*)

As for Kimberly Larson, the court found that, based on her deposition testimony, she "would not have provided exculpatory evidence." (*Id.*, Ex. 33, at 4.) In her deposition, Larson testified that she did not know anything about Melady's whereabouts on the day of the burglary. (*Id.*, Ex. 11, at 5.) She also stated, "I don't know nothing about this case." (*Id.* at 7.) Based on this testimony, the court found that Melady had not "demonstrated that counsel was deficient" for failing to call Larson at trial. (*Id.*, Ex. 33, at 4.)

The state postconviction court acted reasonably in rejecting this claim. "Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that [courts] will seldom, if ever, second guess." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995); *see also Ball v. United States*, 271 F. App'x 880, 884 (11th Cir. 2008) ("Trial counsel's decisions with regard to [defendant's] alibi witnesses were quintessential trial strategy."). "[T]o show that counsel's performance was unreasonable, the petitioner must establish that no competent counsel would have taken the

31

action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

The state postconviction court reasonably concluded that counsel was not deficient for failing to file a notice of alibi or otherwise pursue an alibi defense. As the court explained, the two proposed alibi witnesses—Larson and Kayle Melady—would not have been able to provide alibis for Melady. Thus, counsel was not ineffective for failing to take steps to present their testimony at trial. *See Rizo v. United States*, 662 F. App'x 901, 914 (11th Cir. 2016) ("[I]t was not unreasonable for [counsel] to conclude pursuit of a potential alibi defense would likely be fruitless[.]").

Ground Four is denied.

## Ground Five

Melady raises a freestanding claim of actual innocence, arguing that the "full brea[d]th" of his defense would establish "that [he] was someplace else at the time of the alleged crime." (Doc. 1 at 20-21.) Eleventh Circuit "precedent forecloses habeas relief based on a prisoner's assertion that he is actually innocent of the crime of conviction absent an independent constitutional violation occurring in the underlying state criminal

32

proceeding." *Raulerson v. Warden*, 928 F.3d 987, 1004 (11th Cir. 2019) (internal quotation marks omitted); *see also Cunningham v. Dist. Attorney's Office*, 592 F.3d 1237, 1273 (11th Cir. 2010) ("[An] assertion of actual innocence, by itself, is not enough."). Because Melady fails to establish "an independent constitutional claim, his freestanding actual innocence claim is not cognizable" on federal habeas review. *Collins v. Sec'y, Dep't of Corr.*, 809 F. App'x 694, 696 (11th Cir. 2020). Thus, Ground Five is denied.[10]

**Motion for Discovery**

Finally, Melady has filed a motion for discovery, seeking permission to "issue subpoenas for records from Facebook, Google, and Yahoo and any other follow up subpoenas required to obtain IP address information." (Doc. 17 at 1-2.) Melady contends that the requested subpoenas would help "identify certain internet activities [he] was engaged in at the time the alleged incident occurred." (*Id.* at 1.) According to Melady, this evidence would be "vital to the [] pending actual innocence claim [] in this matter." (*Id.*)

"A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*,

---

[10] In his reply, Melady raises for the first time a claim of cumulative error. (Doc. 9 at 12.) The Court "need not consider [] new claims raised for the first time in" Melady's reply. *Foreman v. Sec'y, Fla. Dep't of Corr.*, No. 3:19-cv-575-TJC-JBT, 2022 WL 3282652, at *13 (M.D. Fla. Aug. 11, 2022). Regardless, the cumulative-error claim fails because none of Melady's "individual claims of error" has "any merit." *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012).

520 U.S. 899, 904 (1997). Still, "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." Rule 6(a), Rules Governing § 2254 Cases. Good cause may be established where "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy*, 520 U.S. at 908-09.

Melady is not entitled to the requested discovery. According to Melady, the subpoenas would allow him to support his "pending actual innocence claim." (Doc. 17 at 1.) But, as noted above, this Court cannot grant "habeas relief based on a prisoner's assertion that he is actually innocent of the crime of conviction absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Raulerson*, 928 F.3d at 1004 (internal quotation marks omitted). Thus, "[t]here is no good cause to allow for discovery, because even if evidence of actual innocence is found, it would not provide [Melady] relief due to the fact he has failed to establish an independent constitutional violation in his underlying state court proceedings." *Roundtree v. Inch*, No. 19-61208-CV, 2020 WL 8458863, at *11 (S.D. Fla. Nov. 25, 2020), *adopted by* 2021 WL 266280 (S.D. Fla. Jan. 27, 2021); *see also Braswell v. Phillips*, No. 2:19-cv-02362-TLP-TMP, 2022 WL 696812, at *12 (W.D. Tenn. Mar. 8, 2022) ("Because a freestanding claim of

34

actual innocence is not cognizable, Petitioner has no basis to obtain discovery to support such a claim."). For this reason, the request to conduct discovery is denied.[11]

## Conclusion

Accordingly, it is **ORDERED** that Melady's petition (Doc. 1) is **DENIED**. Melady's motion for discovery (Doc. 17) is also **DENIED**. The **CLERK** is directed to enter judgment against Melady and to **CLOSE** this case.

It is further **ORDERED** that Melady is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. To obtain a certificate of appealability, Melady must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Melady has not made the requisite

---

[11] Melady seeks an evidentiary hearing on his claims. The Court concludes that an evidentiary hearing is not warranted. *See Schriro*, 550 U.S. at 474 (stating that "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing"); *Landers v. Warden*, 776 F.3d 1288, 1295 (11th Cir. 2015) ("[B]efore a habeas petitioner may be entitled to a federal evidentiary hearing on a claim that has been adjudicated by the state court, he must demonstrate a clearly established federal-law error or an unreasonable determination of fact on the part of the state court, based solely on the state court record.").

35

showing. Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Melady must obtain permission from the circuit court to appeal *in forma pauperis*.

  **DONE and ORDERED** in Tampa, Florida, this 14th day of November, 2023.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**